**L IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LANDO NORRIS

                      Plaintiff,

    v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

              Defendants.

Case No. 23-cv-16827

**COMPLAINT**

Plaintiff Lando Norris ("Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.    This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief,

sell products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II. INTRODUCTION

3.     Plaintiff filed this case to prevent e-commerce store operators who trade upon Plaintiff's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers.  E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of his registered trademarks, as well as to protect consumers from purchasing Unauthorized Products over the Internet. Plaintiff has been, and continues to be, irreparably damaged through consumer confusion and dilution of his valuable trademarks because of Defendants' actions and therefore seeks injunctive and monetary relief.

2

### III. THE PARTIES

4.     Lando Norris owns the trademark rights asserted in this action.[1] Plaintiff's trademarks are related to the Lando Norris brand.

5.     Lando Norris is a 24-year-old British Formula 1 driver currently competing in Formula 1 as McLaren's senior driver. In 2009, Norris became, and remains, the youngest driver to ever get pole at a national meeting. In 2014, he became the youngest World Championship winner at the CIK-FIA KF World Championships.  Norris's success continued as he rose through the ranks of Formula 4, 3, and 2, culminating in a contract to drive for McLaren in the 2019 Formula 1 World Championship. After taking several podium positions during the 2020 and 2021 racing seasons, Norris renewed with McLaren for an additional term that extends until 2025. Today, Lando Norris continues to gain fans at international Formula 1 Grand Prix events as he competes in his fifth full Formula 1 season.

6.     Plaintiff markets and sells a variety of Lando Norris branded products, including clothing, keychains, bags, hats, stickers, beverage ware, and other merchandise bearing Plaintiff's trademarks (collectively, "Plaintiff's Products"). Plaintiff's Products have become enormously popular. Among the purchasing public, Plaintiff's products are instantly recognizable as such. Plaintiff's products are distributed and sold to consumers by Plaintiff and his licensees through authorized channels, including through Plaintiff's official website, www.landonorris.com.

7.     Plaintiff has used the LANDO NORRIS and L4NDO trademarks and has continuously sold products under his trademarks (collectively, "Plaintiff's Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in Plaintiff's Trademarks. Plaintiff's use of the marks has also built substantial goodwill in Plaintiff's

---

[1] Celero Promotions Limited assigned all rights in the trademarks asserted herein to Plaintiff on December 31, 2021.

Trademarks. Plaintiff's Trademarks are famous marks and valuable assets of Plaintiff. Plaintiff's Products also typically include at least one of Plaintiff's Trademarks.

       8.     Plaintiff's Trademarks are registered with the United States Patent and Trademark Office and are included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 7,153,102 | LANDO NORRIS | Sep. 05, 2023 | For: non-medicated cosmetics and toiletry preparations; non-medicated dentifrices; perfumery, essential oils; bleaching preparations; cleaning, polishing, scouring and abrasive preparations; non-medicated soaps; eau-de-cologne; hair conditioners; cosmetic creams; shaving creams, shaving gels; facial cleansing creams; shower gels and creams; non-medicated skin care creams, beauty creams, moisturizing creams; polishing creams; deodorants and antiperspirants for personal use; sun care lotions; pre-shave and after-shave lotions; hair lotions, hair gels, hair creams, hair spray; decorative transfers for cosmetic purposes; essential oils; eye shadows; perfumes; face powders; cosmetic preparations for baths; cleaning, polishing, scouring and abrasive preparations for household use, polishing preparations for washing automobiles; make-up preparations; washing preparations; cleaning preparations; make-up removing preparations; oral care products, namely, dentifrices and non-medicated mouthwashes; cleansing products for the body, particularly including cleansing lotions, beauty masks, cleansing foam, cleansing creams, cleansing gels and cleansing milk; cleaning products, cleaning agents for cleaning surfaces, automobile tire cleaning preparations; non-medicated |

liquid soaps in class 003.

For: mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment, computers; computer software for the purpose of recording and displaying data relating to motor racing; computer software for the purpose of playing electronic games, uploading and viewing videos; fire-extinguishing apparatus; software for the purpose of playing electronic games, uploading and viewing videos; computer software platforms for the purpose of recording and displaying data relating to motor racing; computer software platforms for the purpose of playing electronic games, uploading and viewing videos; downloadable computer software applications for the purpose of playing electronic games, uploading and viewing videos; downloadable smart phone applications for the purpose of recording and displaying data relating to motor racing; downloadable smart phone applications for the purpose of playing electronic games, uploading and viewing videos; computer application software for the purpose of recording and displaying data relating to motor racing; computer application software for the purpose of playing electronic games, uploading and viewing videos; software and mobile applications for mobile devices for the purpose of recording and displaying data relating to motor racing; software and mobile applications for mobile devices for the purpose of playing electronic games, uploading and viewing videos; game software; video game programmes; virtual

| | | | reality software for the purpose of recording and displaying data relating to motor racing; virtual reality software for the instruction and training of motor racing drivers; virtual reality software for the purpose of playing electronic games, uploading and viewing videos; computer software for use in accessing, updating, manipulating, modifying, organizing, storing, backing up, synchronizing, transmitting and sharing data, documents, files, information and multimedia content via a global computer network and via any other communications networks; electronic publications, namely, ebooks, emagazines, manuals featuring sports news, instruction and training manuals, biographies of athletes, recorded on computer media; downloadable electronic publications, namely, ebooks, emagazines, manuals featuring sports news, instruction and training manuals, biographies of athletes; sunglasses and spectacles; cords, frames, optical lenses and cases for use with spectacles, sunglasses and optical glasses; earphones; earphones and headsets for mobile telephones; cases adapted for mobile phones; headphones; cameras; protective clothing, headgear and footwear, namely, clothing for wear by motor racing car drivers for protection against accident or injury; protective helmets and gloves for protection against accident or injury; automobile racing suits for safety purposes in the nature of protective suits for race car drivers; head cleaning tapes for video recorders; laboratory glassware; headgear being protective helmets; sporting equipment for boxing and martial arts, namely, protective helmets in class 009. |
|---|---|---|---|

For: land vehicles; apparatus for locomotion by land, air or water, namely automobiles, motorcycles, motor racing automobiles, aircraft; aero planes; bicycles; air pumps being vehicle accessories for automobiles and motorcycles; bicycle bells; anti-skid chains for vehicles, vehicle tires; inner tubes for pneumatic tires; vans; trucks; treads for re-treading tires; safety belts for vehicle seats; spikes for vehicle tires in the nature of non-skid devices, namely, non-skid studs; tire covers specially adapted for automobile tires; sun-blinds adapted for automobiles; motor racing cars; baby carriages being strollers; windshield wipers being vehicle parts; fitted seat covers for vehicles; fitted vehicle covers; covers for vehicle steering wheels; hubcaps; rims for vehicle wheels; motorcycles; engines for land vehicles; scooters being land vehicles; luggage carriers for vehicles; rear-view mirrors; vehicle wheels; safety seats for children for vehicles; valves for vehicle tires; electric vehicles, namely, land vehicles, self-propelled electric vehicles, electrically-powered motor vehicles; utility vehicles, namely, utility terrain vehicles, sports utility vehicles, all of the aforesaid for use in connection with motor racing or the promotion of motor racing in class 012.

For: adhesives for stationery or household purposes; printers' type, printing blocks; postage stamps; printed timetables; newspapers; stickers; sticker albums; printed tickets; transfers; decals; bumper stickers; entry tickets in the nature of passes; vignettes in the nature of graphic

|  |  |  | prints; comic books; cartoon prints; pictures; photograph albums; sticker albums, photo albums; bookends; bookmarkers; scrap books; paint boxes; rulers for drawing in class 016.<br><br>For: wallets; handbags; rucksacks; luggage and all purpose carrying bags; travelling and luggage trunks and travelling bags; umbrellas, parasols and walking sticks in class 018.<br><br>For: household and kitchen utensils, namely, kitchen tongs, serving scoops, serving dishes, forks, ladles, and containers for household or kitchen use; cookware and tableware, except forks, knives and spoons, namely, pots and pans, tea services in the nature of tableware; unworked or semi-worked glass, except building glass; glassware, porcelain and earthenware, namely, beverage glassware, porcelain mugs, earthenware mugs; drinking vessels; tumblers for use as drinking glasses; cups; wine glasses, martini glasses, cocktail glasses; plates and dishes; table mats, not of paper or textile; bottle openers; bottles, sold empty; statues and sculptures of china, earthenware, terra cotta, glass, porcelain in class 021.<br><br>For: clothing, namely, footwear, shirts, pants, socks; headwear; coats; jackets; hats; caps being headwear; shirts; headbands; sweatshirts; skirts; bandanas; gloves; waterproof clothing, namely, outerwear in the nature of gloves, raincoats, jackets, sports jackets, shirts, pants, socks; underwear; socks; trousers; shorts; pajamas; sports shoes; t-shirts; |
|---|---|---|---|

uniforms; motorists clothing, namely, motor racing suits, driving gloves; suits for infants and children; trunks being clothing in class 025.

For: video game apparatus, namely, video game consoles; computer games apparatus, namely, video game consoles; electronic games in the nature of handheld units for playing electronic games, electronic games other than those adapted for use with television receivers only, tabletop units for playing games other than tin conjunction with a television or computer, arcade-type electronic video games; motor racing games in the nature of arcade racing game machines; handheld electronic games; sporting articles and equipment, namely, spring boards, weight lifting belts, boxing gloves in class 028.

For: rental of advertising space on motor racing cars; business administration; business management; office functions; business management of a professional video gaming sports team and persons who participate in competitions and events for computer games; retail store and distributorship services featuring clothing, footwear, headwear, games, toys and playthings, video game apparatus, computer games apparatus, electronic games, sports games, motor racing games, racing car games, handheld electronic games, board games, toy racing sets, sports games, and sporting articles and equipment; the bringing together, for the benefit of others, of a variety of goods, enabling customers to conveniently view and purchase those goods in the field of

|  |  |  | clothing, footwear, headwear, games, toys and playthings, video game apparatus, computer games apparatus, electronic games, sports games, motor racing games, racing car games, handheld electronic games, board games, toy racing sets, sports games, and sporting articles and equipment; the aforementioned services all available via any communications media in class 035.

For: telecommunications, namely, streaming of audiovisual material on the internet and providing internet chat rooms, provided via an electronic sports and video gaming web portal; transmission of digital information by cable, wire or fiber networks; streaming of audiovisual material on the internet and providing internet chat rooms, provided via an electronic sports and video gaming web portal or social media platform; electronic message transmission; computer aided transmission of messages and images; electronic data transmission, namely, transmission of commercial internet pages online or via wireless electronic communication devices; facsimile transmission; on-line transmission of digital files, namely, electronic publications; television and radio broadcasting services, namely, transmission and dissemination of television and radio programs via the internet or via any wireless electronic communication network; satellite transmission in class 038.

For: education services, namely, computer education training services; audio and |

| | | | |
|---|---|---|---|
| | | | video recording services; publishing of electronic publications; publication of printed matter and printed publications; publication of magazines, calendars, books, leaflets, posters; the aforementioned services all available via any communications media; hosting an electronic sports and video gaming web portal, namely, providing a web-based on-line portal for customers to participate in on-line gaming, operation and coordination of game tournaments, leagues and tours for recreational computer game playing purposes in class 041. |
| 7,172,019 | L4NDO | Sep. 26, 2023 | For: non-medicated cosmetics and toiletry preparations; non-medicated dentifrices; perfumery, essential oils; bleaching preparations; cleaning, polishing, scouring and abrasive preparations; non-medicated soaps; eau-de-cologne; hair conditioners; cosmetic creams; shaving creams, shaving gels; facial cleansing creams; shower gels and creams; non-medicated skin care creams, beauty creams, moisturizing creams; polishing creams; deodorants and antiperspirants for personal use; sun care lotions; pre-shave and after-shave lotions; hair lotions, hair gels, hair creams, hair spray; decorative transfers for cosmetic purposes; essential oils; eye shadows; perfumes; face powders; cosmetic preparations for baths; cleaning, polishing, scouring and abrasive preparations for household use, polishing preparations for washing automobiles; make-up preparations; washing preparations; cleaning preparations; make-up removing preparations; oral care products, namely, dentifrices and non-medicated |

mouthwashes; cleansing products for the body, particularly including cleansing lotions, beauty masks, cleansing foam, cleansing creams, cleansing gels and cleansing milk; cleaning products, cleaning agents for cleaning surfaces, automobile tire cleaning preparations; non-medicated liquid soaps in class 003.

For: mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment, computers; computer software for the purpose of recording and displaying data relating to motor racing; computer software for the purpose of playing electronic games, uploading and viewing videos; fire-extinguishing apparatus; software for the purpose of playing electronic games, uploading and viewing videos; computer software platforms for the purpose of recording and displaying data relating to motor racing; computer software platforms for the purpose of playing electronic games, uploading and viewing videos; downloadable computer software applications for the purpose of playing electronic games, uploading and viewing videos; downloadable smart phone applications for the purpose of recording and displaying data relating to motor racing; downloadable smart phone applications for the purpose of playing electronic games, uploading and viewing videos; computer application software for the purpose of recording and displaying data relating to motor racing; computer application software for the purpose of playing electronic games, uploading and viewing videos; software and mobile

|  |  |  | applications for mobile devices for the purpose of recording and displaying data relating to motor racing; software and mobile applications for mobile devices for the purpose of playing electronic games, uploading and viewing videos; game software; video game programmes; virtual reality software for the purpose of recording and displaying data relating to motor racing; virtual reality software for the instruction and training of motor racing drivers; virtual reality software for the purpose of playing electronic games, uploading and viewing videos; computer software for use in accessing, updating, manipulating, modifying, organizing, storing, backing up, synchronizing, transmitting and sharing data, documents, files, information and multimedia content via a global computer network and via any other communications networks; electronic publications, namely, ebooks, emagazines, manuals featuring sports news, instruction and training manuals, biographies of athletes, recorded on computer media; downloadable electronic publications, namely, ebooks, emagazines, manuals featuring sports news, instruction and training manuals, biographies of athletes; sunglasses and spectacles; cords, frames, optical lenses and cases for use with spectacles, sunglasses and optical glasses; earphones; earphones and headsets for mobile telephones; cases adapted for mobile phones; headphones; cameras; protective clothing, headgear and footwear, namely, clothing for wear by motor racing car drivers for protection against accident or injury; protective helmets and gloves for protection against accident or injury; |
|---|---|---|---|

| | | | automobile racing suits for safety purposes in the nature of protective suits for race car drivers; head cleaning tapes for video recorders; laboratory glassware; headgear being protective helmets; sporting equipment for boxing and martial arts, namely, protective helmets in class 009.<br><br>For: wallets; handbags; rucksacks; luggage and all purpose carrying bags; travelling and luggage trunks and travelling bags; umbrellas, parasols and walking sticks in class 018.<br><br>For: clothing, namely, footwear, shirts, pants, socks; headwear; coats; jackets; hats; caps being headwear; shirts; headbands; sweatshirts; skirts; bandanas; gloves; waterproof clothing, namely, outerwear in the nature of gloves, raincoats, jackets, sports jackets, shirts, pants, socks; underwear; socks; trousers; shorts; pajamas; sports shoes; t-shirts; uniforms; motorists clothing, namely, motor racing suits, driving gloves; suits for infants and children; trunks being clothing in class 025.<br><br>For: video game apparatus, namely, video game consoles; computer games apparatus, namely, video game consoles; electronic games in the nature of handheld units for playing electronic games, electronic games other than those adapted for use with television receivers only, tabletop units for playing games other than tin conjunction with a television or computer, arcade-type electronic video games; motor racing games in the nature of arcade racing game machines; handheld electronic games; |
|---|---|---|---|

| | | | sporting articles and equipment, namely, spring boards, weight lifting belts, boxing gloves in class 028.<br><br>For: education services, namely, computer education training services; audio and video recording services; hosting an electronic sports and video gaming web portal, namely, providing a web-based on-line portal for customers to participate in on-line gaming, operation and coordination of game tournaments, leagues and tours for recreational computer game playing purposes in class 041. |
|---|---|---|---|

9. The U.S. registrations for Plaintiff's Trademarks are valid, subsisting, and in full force and effect. The registrations for Plaintiff's Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use Plaintiff's Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for Plaintiff's Trademarks are attached hereto as **Exhibit 1**.

10. Plaintiff's Trademarks are exclusive to Plaintiff and are displayed extensively on Plaintiff's Products and in marketing and promotional materials. Plaintiff's Trademarks are also distinctive when applied to Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff, or his licensees, and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products himself or contracts with others to do so, Plaintiff has ensured that products bearing Plaintiff's Trademarks are manufactured to the highest quality standards.

11. Plaintiff's Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. Plaintiff's career success, in addition to the marketing of Plaintiff's Products, has enabled the Lando Norris brand to achieve

widespread recognition and fame and has made Plaintiff's Trademarks some of the most well-known marks in the automotive racing industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Lando Norris brand have made Plaintiff's Trademarks valuable assets of Plaintiff.

12.     Products bearing Plaintiff's Trademarks have been the subject of substantial and continuous marketing and promotion. Plaintiff has marketed and promoted, and continues to market and promote, Plaintiff's Products in the industry and to consumers through authorized outlets, social media sites, point of sale material, and Plaintiff's website, www.landonorris.com.

13.     Plaintiff has expended substantial time, money, and other resources advertising, promoting, and marketing Plaintiff's Products. Plaintiff's Products have also been the subject of extensive unsolicited publicity due to the success of the Lando Norris brand. As a result, products bearing Plaintiff's Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from Plaintiff.  Plaintiff's Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks.  As such, the goodwill associated with Plaintiff's Trademarks is of immeasurable value to Plaintiff.

14.     Plaintiff's Products are sold only by Plaintiff or through authorized licensees and are recognized by the public as being exclusively associated with the Lando Norris brand.

15.     Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.  On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

16.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17.     The success of the Lando Norris brand has resulted in significant counterfeiting of Plaintiff's Trademarks.  Because of this, Plaintiff has implemented an anti-counterfeiting program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like AliExpress.com ("AliExpress"), Amazon.com, Inc. ("Amazon"), ecrater.com ("eCRATER"), Etsy, Inc. ("Etsy"), Pixels.com, LLC d/b/a Fine Art America ("Fine Art America"), Fruugo.com Limited ("Fruugo"), Focus Technology Co., Ltd. ("MadeinChina"), Printerval.com ("Printerval"), Spreadshirt, Inc. ("Spreadshirt"), and Context Logic, Inc. d/b/a Wish.com ("Wish"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters.  *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 2**).

18.     Because counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, the US economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id.* When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

19.     Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying

business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.  **Exhibit 4** at p. 39.  Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."  **Exhibit 3** at 186-187.  Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order."  *Id.* at p. 161.

20.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell Unauthorized Products to residents of Illinois.

21.     Defendants concurrently employ and benefit from similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer.  Plaintiff has not licensed or authorized Defendants to use Plaintiff's Trademarks, and none of the Defendants are authorized retailers of Plaintiff's Products.

22.     Many Defendants also deceive unknowing consumers by using Plaintiff's Trademarks within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to Plaintiff's Products.  Other e-commerce stores operating under the Seller Aliases omit using Plaintiff's Trademarks in the item

title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiff's Products.

23.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

25.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

26.     E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners.  Websites like sellerdefense.cn also tip off e-commerce store operators, like Defendants, of new intellectual property infringement lawsuits filed by brand owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

27.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

28.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully used and continue to use Plaintiff's Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

29.     Defendants' unauthorized use of Plaintiff's Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

30. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of Plaintiff's Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiff's Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from products offered, sold, or marketed under Plaintiff's Trademarks.

32. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiff's Trademarks without Plaintiff's permission.

33. Plaintiff owns Plaintiff's Trademarks. Plaintiff's United States registrations for Plaintiff's Trademarks are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of Plaintiff's Trademarks. Defendants' willful, intentional, and unauthorized use of Plaintiff's Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

34. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. Plaintiff has no adequate remedy at law and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to his reputation and the goodwill of Plaintiff's Trademarks.

36.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

37.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Products by Plaintiff.

39.     By using Plaintiff's Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

40.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41.     Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm to his reputation and the associated goodwill of the Lando Norris brand if Defendants' actions are not enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using Plaintiff's Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not one of Plaintiff's Products or is not authorized by Plaintiff to be sold in connection with Plaintiff's Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as one of Plaintiff's Products or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing Plaintiff's Trademarks and damaging Plaintiff's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's Trademarks;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, including

AliExpress, Amazon, eCRATER, Etsy, Fine Art America, Fruugo, MadeinChina, Printerval, Spreadshirt, and Wish, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Plaintiff's Trademarks;

3)     That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4)     In the alternative, that Plaintiff be awarded statutory damages, for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2), of $2,000,000 for each and every use of Plaintiff's Trademarks;

5)     That Plaintiff be awarded his reasonable attorneys' fees and costs; and

6)     Award any and all other relief that this Court deems just and proper.

Dated this 15th day of December, 2023.     Respectfully submitted,

/s/ Martin F. Trainor
Martin F. Trainor
Sydney Fenton
Richard Poskozim
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
sydney@tme-law.com
richard@tme-law.com

*Counsel for Plaintiff Lando Norris*